# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VALVELLA T. MCNEAL, ) | |
| ) | No. 17 C 3128 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Valvella T. McNeal appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

## Background

Plaintiff filed an application for benefits on February 11, 2010. (R. 70.) Her application was denied initially on April 21, 2010 and again on reconsideration on December 1, 2010. (R. 70, 72.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 25, 2012. (R. 33-69.) On January 14, 2013, the ALJ issued a decision denying plaintiff's application. (R. 20-27.) The Appeals Council denied review (R. 1-3), and plaintiff appealed to this Court, which reversed and remanded the case for further proceedings. (R. 674-75, 683-705.) On October 11, 2016, the ALJ held another hearing (R. 624-51), and on January 27, 2017, she issued a second decision denying plaintiff's application. (R. 604-17.) Plaintiff did not seek Appeals Council review of the second decision, and the Appeals Council did not

otherwise assume jurisdiction over it, leaving the ALJ's second decision as the final decision of the Commissioner. *See* 20 C.F.R. § 416.1484(d); *see also* 42 U.S.C. § 405(g).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citation omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the

burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date, July 14, 2008. (R. 606.) At step two, the ALJ determined that plaintiff has the severe impairments of "bilateral carpal tunnel syndrome, left cubital syndrome,[1] DeQuervain's Syndrome,[2] degenerative changes of both knees, asthma, and obesity." (R. 607.) At step three the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 609.) At step four, the ALJ found that plaintiff is unable to perform any past relevant work (R. 615) but retains the residual functional capacity ("RFC"):

> [T]o perform sedentary work . . . except she can never climb ladders, ropes, or scaffolding. She can no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend, or twist. She can use her upper extremities no more than frequently to finger, feel, handle, and reach. She can use her upper extremities no more than occasionally to push and/or pull. She must be allowed a sit-stand option which allows her to stand one to two minutes after sitting for 30 minutes. She must be allowed to use a cane as needed to get to and from her workstation. She must avoid concentrated exposure to lung irritants, operating motor vehicles, and work hazards such as unprotected heights and dangerous moving machinery.

(R. 610-11.) At step five, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, and thus she is not disabled. (R. 615-16.)

Plaintiff argues that the ALJ failed to properly assess the opinion of treating physician Dr. Law. An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

---

[1] "Cubital Tunnel Syndrome is a condition that involves pressure or stretching of the ulnar nerve . . . , which can cause numbness or tingling in the ring and small fingers, pain in the forearm, and/or weakness in the hand." *See* http://www.assh.org/handcare/hand-arm-conditions/cubital-tunnel (last visited Jan. 12, 2018).
[2] DeQuervain's Syndrome "is a painful condition affecting the tendons on the thumb side of [the] wrist." *See* https://www.mayoclinic.org/diseases-conditions/de-quervains-tenosynovitis/basics/definition/con-20027238 (last visited Jan. 12, 2018).

inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must give good reasons for the weight that it assigns a treating physician's opinion. *Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013. "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c).

The ALJ failed to consider these factors in her first decision denying plaintiff's application (*see* R. 25), a defect this Court in its remand order directed the ALJ to correct. (*See* R. 700 ("On remand, the ALJ shall reevaluate the weight to be afforded Dr. Law's opinion. If the ALJ finds 'good reasons' for not giving the opinion controlling weight . . . , the ALJ shall explicitly 'consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion,' *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009), in determining what weight to give the opinion . . . .").) The ALJ was required to make this assessment both by the doctrine of law of the case and the plain language of the regulations. *See Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) ("The law of the case doctrine, which requires the trial court to conform any further proceeding on remand to the principles set forth in the appellate opinion unless there is a compelling reason to depart is applicable to judicial review of administrative decisions.") (quotation and citation omitted); 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's medical opinion controlling weight . . . , we consider all of the

[enumerated] factors in deciding the weight we give to any medical opinion."). The ALJ's failure to do so, notwithstanding the explicit instruction in the remand order, is puzzling.

As defendant points out, however, a failure to explicitly discuss every regulatory factor is not necessarily fatal. It "is enough" if the ALJ "note[s] the lack of medical evidence supporting [the doctor's] opinion . . . and its inconsistency with the rest of the record." *See Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) (citing *Elder v. Astrue*, 529 F.3d 408, 415-16 (7th Cir. 2008)). That is precisely what the ALJ did here. (*See* R. 613-14.) Thus, the ALJ's failure to discuss the other regulatory factors, though not laudable, does not doom her decision.

Plaintiff also challenges the ALJ's RFC determination, arguing first that the sit/stand option, is not supported by the record. The Court agrees. The ALJ did not cite any medical or other evidence for incorporating a sit/stand option that contemplates standing for "one to two minutes after sitting for 30 minutes." (R. 611.) Rather, the ALJ apparently created this limitation on her own:

> The claimant complained of insurance problems that prevented her from getting the recommended bilateral knee surgery. This was considered by the undersigned in the [RFC] by restricting the claimant to the limited standing and walking required of sedentary work. Moreover, the [RFC] includes a sit/stand option, as well as a reduced ability to perform postural movements.

(*Id.*)

Defendant contends the ALJ was permitted to create the RFC because the regulations vest the ALJ with the responsibility for doing just that. (Def.'s Mem. Supp. Mot. Summ. J., ECF 22 at 4); *see* 20 C.F.R. § 404.1546(c) (stating that the ALJ "is responsible for assessing your residual functional capacity"). That is true, but the regulations also require the ALJ to base the RFC determination "on all of the relevant medical and other evidence." *See* 20 C.F.R. § 404.1545(a)(3); *see* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment

must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . ."); *see also Bailey v. Barnhart*, 473 F. Supp. 2d 822, 838-39 (N.D. Ill. 2006) (reversing ALJ's decision because she "came up with her own physical RFC assessment . . . . without any citation to the record for this finding") (emphasis omitted). Here, the ALJ did not cite to any evidence that suggests standing for "one to two minutes after sitting for 30 minutes" (R. 611) will accommodate plaintiff's knee impairments.

The ALJ also found that plaintiff can "use her upper extremities . . . frequently to finger, feel, handle, and reach" (R. 610), a conclusion she based on plaintiff's "[ability] to use her upper extremities and hands to do activities such as household chores, food preparation, laundry, driving . . . shopping . . . . [and] carr[ying] groceries to her apartment." (R. 612.) But the ALJ did not explain how plaintiff's ability to do these activities indicates that she can feel, handle, and reach with her arms *frequently*, *i.e.*, for 1/3 to 2/3 of a workday, *see Dictionary of Occupational Titles*, App'x C, § IV, *available at* https://occupationalinfo.org/appendxc_1.html (last visited Jan. 12, 2018). Moreover, there is medical evidence, which the ALJ did not address, that suggests plaintiff cannot perform such actions "frequently." (*See* R. 523 (November 2010 functional capacity evaluation stating that plaintiff can occasionally, *i.e.*, up to one-third of a workday, engage in fine motor tasks with her right hand and making no findings as to the left); R. 892 (Dr. Law opining in 2016 that plaintiff has "more than 50% reduced capacity" in using a keyboard, wrist flexion and extension, and fine manipulation).[3]

---

[3] The ALJ took issue with Dr. Law's assertion in this statement that plaintiff would have difficulty concentrating. (*See* R. 614 (giving "little weight" to Dr. Law's August 23, 2016 medical source statement because "the doctor did not explain or quantify how [plaintiff] can lose concentration" and "did not explain or refer to the record to support the opinion"). The ALJ did not, however, address the physical limitations Dr. Law set forth in that statement.

In short, the ALJ did not build a logical bridge from the evidence to these components of the RFC, which was error. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (stating that an ALJ "must build an accurate and logical bridge from the evidence to [her] conclusion").[4]

**Conclusion**

For the reasons set forth above, the Court reverses the Commissioner's decision and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**　　　　　　　　　　　**ENTERED:　March 21, 2018**

_M. David Weisman_
**M. David Weisman**
**United States Magistrate Judge**

---

[4] Plaintiff further contends that the ALJ's evaluation of her symptoms was flawed. Because symptom evaluation is intertwined with assessment of the RFC, that issue must be revisited on remand as well.